UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BROOKE WENNER O/B/O
A.R.L.D.,                                                          **DECISION AND ORDER**

                              Plaintiff,                    1:18-CV-00826(JJM)

v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

        This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the final determination of defendant Andrew M. Saul, the Commissioner of Social Security, that plaintiff's minor child was not entitled to Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [10, 17].[1] The parties have consented to my jurisdiction [19]. Having reviewed the parties' submissions [10, 17, 18], the Commissioner's motion is granted, and plaintiff's motion is denied.

**BACKGROUND**

        The parties' familiarity with the entire 624 page record is presumed. On April 1, 2015, plaintiff, A.R.L.D.'s mother, applied for SSI on A.R.L.D.'s behalf, alleging that she was disabled since April 1, 2014 because of attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, anxiety, depression, suicidal thoughts, and oppositional defiant disorder. Administrative Record [7], pp. 98, 235. At that time, A.R.L.D. was 9 years old. The application

---

[1]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

was denied on July 24, 2015. Id., pp. 98-106.  An administrative hearing was conducted before Administrative Law Judge ("ALJ") Larry Banks on October 24, 2017, at which plaintiff and A.R.L.D. testified. Id., pp. 37-100.

In his December 18, 2017 decision, ALJ Banks determined that A.R.L.D.'s severe impairments were ADHD and anxiety disorder. Id., p. 13.  He also found that A.R.L.D. did not have an impairment or combination of impairments that equaled or functionally equaled a listed impairment, concluding that she had a marked limitation in the domain of interacting and relating with others, had less than a marked limitation in the domains of acquiring and using information, attending and completing tasks, and caring for oneself, but no limitation in the remaining domains. Id., pp. 18-22.  Since A.R.L.D. did not have an impairment or combination of impairments that resulted in either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning, ALJ Banks concluded that she was not disabled from April 1, 2015 through the date of his December 18, 2017 decision.  Id., p. 23.

The opinion evidence before ALJ Banks included:

-- The April 28, 2015 Teacher Questionnaire completed by A.R.L.D.'s third-grade teacher, Marie Martell, which stated that A.R.L.D. was in a classroom with a 23:1 student/teacher ratio, that her reading level was 38 out of 40 (or "avg."), her math level was 3 out of 4, and that her written language level was 3 out of 4.  Id., p. 249.  Assessing A.R.L.D.'s limitations under each domain, Ms. Martell found that she had no problem or a slight problem in the functions necessary for acquiring and using information, no problem in the functions necessary for moving and manipulating objects, but found that she had some serious to very serious problems in some of the functions necessary for attending and completing tasks, interacting and relating with others, and caring for herself. Id., pp. 250-56;

-- The June 16, 2015 consultative child psychiatric evaluation performed by Christine Ransom, Ph.D. determined that A.R.L.D. had "mild" limitations which were "secondary to bipolar disorder currently mild, [ADHD] currently mild, [and] unspecified anxiety disorder currently mild". Id., p. 390. Dr. Ransom noted that A.R.L.D.'s "[a]ttention and concentration were intact", and that while "[s]he is sometimes not able to stay on task or sit still at school", that was "improved with medication". Id. A.R.L.D.'s adaptive functioning also "appeared to be in the average range". Id; and

-- The July 23, 2015 opinion of the state agency review physician, J. Sharif-Najafi, M.D.,[2] that A.R.L.D. had a "marked" limitation interacting and relating with others, but otherwise had less than marked or no limitations in the remaining domains. Id., pp. 103-04.

In weighing these opinions, ALJ Banks explained that while Ms. Martell "is not an acceptable medical source . . . to the extent her opinions are consistent with [the] record . . . [he] afforded them some weight . . . . Ms. Martell made her assessments in 2015 when the claimant was in third grade. Since that time, the claimant has had medication changes and has engaged in regular therapy. As a result, the evidence shows improvement in the areas of concentration, interacting with others and caring for herself". Id., p. 17.

Likewise, ALJ Banks afforded "some weight" to Dr. Ransom's opinion, explaining that:

> "[w]hile the record does show problems with behavior, the claimant has shown improvement in this area . . . . The claimant has minimal academic problems with report cards showing the claimant meets or exceeds expectations. To the claimant's credit, her testimony showed she has a good understanding of her conditions. In her testimony, the claimant accurately described her medication regimen and acknowledged some problems getting along with friends and family. Dr. Wohltmann

---

[2] Although Dr. Sharif-Najafi's credentials are not in the record, the Commissioner identifies him as a pediatrician and plaintiff does not dispute that characterization. See Commissioner's Brief [17-1], p. 8 n. 4.

indicates that the claimant['s] irritability may reflect the claimant's personality style indicating more personality problems than behavioral problems . . . . Nonetheless, given the continued reports of temper tantrums and behavioral outbursts, the record supports slightly more than minimal limitations, especially in the area of interacting with others". Id.

By contrast, ALJ Banks gave "significant weight" to Dr. Sharif-Najafi's opinion as being "consistent with the self-reported abilities of the claimant, the medical evidence of record that shows adequate response to treatment, clinical observations, and results of diagnostic studies and psychological examinations that failed to identify any substantial functional limitations". Id., p. 17.

The Appeals Council denied plaintiff's request for review (id., pp. 1-4), and thereafter she commenced this action.

## DISCUSSION

In seeking remand for a calculation of benefits or alternatively for further administrative proceedings, plaintiff argues that ALJ Banks failed to properly evaluate Ms. Martell's questionnaire, the opinions of Drs. Ransom and Sharif-Najafi, and the subjective allegations. Plaintiff's Memorandum of Law [10-1], Points 1-3.

**A.    Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as

adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

B.      **Infant Disability Standard**

A claimant under 18 years of age, such as A.R.L.D., is "disabled" under the Social Security Act if he has a medically determinable physical or mental impairment (or combination of impairments) that result in "marked and severe functional limitations . . . which has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §1382c(a)(3)(C). Under the applicable regulations, A.R.L.D. must show that she is not working, that she has a "severe" impairment or combination of impairments, and that the impairment or combination of impairments is of listing-level severity - *i.e.*, medically or functionally equal to the severity of a listed impairment. 20 C.F.R. §§416.924(a)-(d).

Functional equivalence of limitations are evaluated on six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. 20 C.F.R. §§416.926a(b)(1)(i)-(vi). Marked limitations in two domains of functioning or an extreme limitation in one domain constitutes a functional equivalent to a listed impairment. Id. §416.926a(d). "Marked" limitation for a domain is when a claimant's "impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities." Id. §416.926a(e)(2)(i).

### C. Did ALJ Banks Fail to Properly Evaluate Ms. Martell's April 28, 2015 Questionnaire?

Ms. Martell, a teacher,[3] is an "other source". *See* Conlin ex rel. N.T.C.B. v. Colvin, 111 F. Supp. 3d 376, 386–87 (W.D.N.Y. 2015) ("[i]t is well established that teacher questionnaires are considered valid 'other source' opinions"). "Social Security Ruling ('SSR') 06-03p directs that opinions from 'other sources' are 'important' and 'should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.'" Sears v. Astrue, 2012 WL 1758843, *3 (D. Vt. 2012) (*quoting* SSR 06–03p, 2006 WL 2329939, *3).[4]

Although the Commissioner is free to decide that the opinions of "other sources," including those of teachers like Ms. Martell "are entitled to no weight or little weight, those decisions should be explained". Id. *See also* Conlin ex rel. N.T.C.B., 111 F. Supp. 3d at 387 ("[i]n a social security disability case, the ALJ is entitled to assign little or no weight to 'other source' opinions . . . . Furthermore, the ALJ has full discretion to determine the appropriate weight to accord the opinion of an 'other source' based on all the evidence before him"). "SSR 06-03p directs the Commissioner to use the same factors in evaluating the opinions of 'other sources' as are used to evaluate the opinions of 'acceptable medical sources,' including treating physicians . . . . These factors include but are not limited to the length of the treatment

---

[3] The Commissioner identifies Ms. Martell as a counselor, but that characterization is not supported by the record. For example, the document she completed was captioned "*Teacher* Questionnaire" and it indicated that she was seeing A.R.L.D. six hours per day, Monday through Friday - a period more consistent with a teacher, rather than a counselor. [7], p. 249 (emphasis added).

[4] As recognized by the Commissioner, SSR 06-03p was rescinded for claims filed on or after March 27, 2017. Commissioner's Brief [17-1], p. 22 n. 7. Here, plaintiff's claim was filed prior to March 27, 2017.

relationship, the frequency of evaluation, and the degree to which the opinion is supported and consistent with the record." Id.

In affording Ms. Martell's opinion "some weight", ALJ Banks noted that since the date of her opinion, A.R.L.D. "has had medication changes and has engaged in regular therapy", the result of which was "improvement in the areas of concentration, interacting with others and caring for herself". [7]. Plaintiff argues that ALJ Banks "failed to evaluate the teacher questionnaire in light of the evidence existing at that time the opinion was made and failed to identify evidence from 2015 or 2016 that is allegedly inconsistent with her opinion". Plaintiff's Memorandum of Law [10-1], p. 16. In response, the Commissioner argues that substantial record evidence supports that A.R.L.D's "behavioral issues improved dramatically with treatment and medication subsequent to Ms. Martell's questionnaire . . . . Thus, the ALJ properly gave only 'some weight,' to Ms. Martell's questionnaire". Commissioner's Brief [17-1], pp. 24, 26. I agree with the Commissioner.

As ALJ Banks noted, in May 2015, shortly after Ms. Martell completed the questionnaire, A.R.L.D. began treating with Genesee County Mental Health Services. [7], p. 15. On June 29, 2015, plaintiff's initial intake assessment with Rachel Mieney, LMSW, found that she had a global assessment of function ("GAF") of 55[5] and had "moderate" impairments and symptoms in all categories, except for "anxiety and worry", "depressed mood", 'difficulty engaging in tasks quietly", "emotional lability", and "irritable and angry mood", which were assessed as "mild". Id., pp. 479, 483. *See also* September 4, 2015 Progress Note with similar

---

[5] GAF rates overall psychological functioning on a scale of 1–100 that takes into account psychological, social, and occupational functioning. "A GAF between 51 and 60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Kohler v. Astrue, 546 F.3d 260, 262 n. 1 (2d Cir. 2008).

findings. Id., p. 492. By November 2015, A.R.L.D.'s behaviors intensified. At that time, her "defiance of rules", "temper outbursts", "oppositional-negativistic behavior with parents", "defiance of school rules", "disrespectful and argumentative behavior toward teachers", and "disruptive behavior in the classroom" were each measured as "severe". Id., pp. 500, 510.

However, by December 2015, plaintiff noted that "there has been some improvement on the current medication regime" (id., p. 515) and by February 2016, these symptoms and impairments had returned to "moderate", with plaintiff reporting that A.R.L.D. "has been doing 'pretty good' and overall better. [She] still has some outbursts, but the frequency and intensity has decreased". Id., pp. 524-25, 527 ("client's mom reported that client doing okay and no med changes were made").[6] Social Worker Mieney's June 22, 2016 Progress Notes reflect further improvement with A.R.L.D. having "mild" limitations in "defiance of school rules" and "argumentative behavior toward teachers". Id., p. 545. In July 2016, this continued with plaintiff reporting that "overall things have been going well", and that A.R.L.D.'s "school year ended on a fairly good note". Id., pp. 546, 550.

By September 2016, Social Worker Mieney's Progress Notes reflected additional progress with A.R.L.D.'s "difficulty sustaining attention" and "lack of friendships" being rated as "mild". Id., p. 556. Plaintiff continued to report that "things have been going pretty well. [A.R.L.D.] has started middle school and is doing cheerleading. [Plaintiff] noted some continued

---

[6] As the Commissioner notes, "[b]y February 2016 - less than 12 months after her alleged disability onset - Dr. Wohltmann and Ms. Mieney observed that [A.R.L.D.] was 'doing reasonably well' in school and was stable with medication and treatment". Commissioner's Brief [17-1], p. 24. Nor is plaintiff alleging a closed period of disability. See Ghio v. Astrue, 2011 WL 923419, *19 (D. Vt. 2011) ("Ghio argues that the ALJ should have awarded Ghio benefits for a closed period of disability . . . . Given Ghio's failure to raise this issue before the ALJ, and failure to amend her claim to request a closed period of disability, the Court need not consider it").

issues with her not being respectful and listening, but stated that there has been some progress as [A.R.L.D.] has shown an increase in insight into her behavior". Id., p. 557. *See also* id., p. 561 (A.R.L.D. "stated that she felt things were going well. She is now in 5th grade and to date school has gone quite well. Mother notes that she has not gotten any complaints from school with respect to the patient's behavior in that setting"). In October 2016, plaintiff reported that she "has noticed a positive difference in [A.R.L.D.'s] behavior . . . . [A.R.L.D.] recently had a temper tantrum, which she hasn't had for awhile. She apologized for her behavior afterwards". Id., p. 565.

On November 15 and December 29, 2016, January 19, 2017, and June 7, 2017, Social Worker Mieney measured A.R.L.D.'s "anxiety and worry" as between "minimal" and "moderate", "depressed mood" as "minimal", "difficulty engaging in tasks quietly" as "mild", "difficulty sustaining attention" as "minimal", "easily distracted by external stimuli" as "mild", "forgetful in daily activities" as "minimal", and "poor judgment in social situations" as "mild" Id., pp. 572, 586, 592, 607. She also noted that her "lack of friendships", "defiance of school rules", "disrespectful and argumentative behavior toward teachers", and "disruptive behavior in the classroom" had all improved to "absent/resolved". Id. *See also* January 18, 2017 team meeting note (id., p. 591 - "[c]lient reportedly does fine at school, but not at home"); January 17, 2017 progress note (id., p. 593 - plaintiff "reported that [A.R.L.D. has] been doing 'alright' . . . . [A.R.L.D] "reported that school is going well. She's doing a color guard competition this weekend that she's excited about"); February 17, 2017 therapist cancellation note (id., p. 597 - "[c]lient's mom reported that client has been doing fine"); June 17, 2017 health monitoring note (id., p. 606 - "[c]lient reports taking all of her medications. No other concerns noted"). Although A.R.L.D. still had behavioral issues, Social Worker Mieney continued to measure her "defiance

of rules", "arguments with family members", "irritable and angry mood", "physically aggressive behavior", "temper outbursts", "verbal aggression", and "oppositional-negativistic behavior with parents" as no more than "moderate". Id., pp. 572, 586, 592, 607.[7]

Although A.L.R.D.'s attention/concentration and impulse control were initially assessed by Social Worker Mieney as "poor " ([7], p. 486), by February 2016 she assessed those as "fair". Id., p. 524. A.L.R.D.'s attention/concentration eventually even improved to "good". Id., pp. 543, 572, 586, 592, 595.

While the October 28, 2016 Psychological Consultation of W. David Driscoll, Psy.D., stated that "[s]eemingly the interventions to date have been unsuccessful in alleviating [A.R.L.D's] presenting symptoms of ADHD, conduct variety", he also noted that A.R.L.D. "is reported to be an excellent student and participates in a wide variety of sports and extracurricular activities. Apparently, the difficulties with which she struggles with at home she does not struggle with at school". Id. *See also* July 22, 2015 progress note (id., p. 573 - A.L.R.D. "was recently elected by her peers to be in student council").

"[U]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that *no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.*" Dailey v. Commissioner of Social Security, 2016 WL 922261, *6 (N.D.N.Y.), adopted, 2016 WL 917941 (N.D.N.Y. 2016) (emphasis added); Brault v. Social Security Administration Commissioner, 683 F.3d 443, 448

---

[7] As noted by ALJ Banks, the record indicates that some of plaintiff's conduct was attributable to a personality issue, rather than a behavioral issue. *See* [7], pp 17, 508 (Dr. Wohltmann's November 24, 2015 psychiatric evaluation - "I pointed out to her that the patient has a fair amount of willful disruptive behavior. I indicated that no medication was going to change that"), 578 (Dr. Wohltmann's December 21, 2016 progress note - "[w]e discussed the fact that the 'irritability' may reflect the patient's personality style").

(2d Cir. 2012) ("[t]he substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*'" (emphasis in original)). Judged against that standard, the record provides substantial evidence for ALJ Banks' conclusion that A.R.L.D.'s impairments improved after Ms. Martell completed the questionnaire. In fact, A.R.L.D.'s behaviors in school - the source of Ms. Martell's opinions - were later determined to be "absent/resolved" by Social Worker Mieney.

Although plaintiff argues that, as a layperson, ALJ Banks could not view the raw medical evidence to conclude that A.R.L.D.'s functioning had improved (plaintiff's Memorandum of Law [10-1], pp. 25-27), that conclusion was within ALJ Banks' discretion based on the record, which contained detailed and longitudinal findings about A.R.L.D.'s impairments and symptoms, to determine that A.R.L.D. had experienced sustained improvement in her level of functioning, including in the domains of caring for herself, interacting with others, and attending and completing tasks. *See* Carney v. Berryhill, 2017 WL 2021529, *4 (W.D.N.Y. 2017) ("Carney argues that . . . the ALJ improperly used his lay opinion . . . . The Court finds, however, that it was within the ALJ's discretion to determine that Carney's post-surgery improvement undermined Dr. Ross's opinion and rendered it inconsistent with the record as a whole").[8] Therefore, I conclude that substantial evidence supports the weight ALJ Banks assigned to Ms. Martell's questionnaire.

---

[8] Although plaintiff points to my decision in Frasier v. Berryhill, 2018 WL 5801059 (W.D.N.Y. 2018), there, unlike here, the ALJ relied upon "references in the record reflecting *isolated* improvement". Id., *3 (emphasis added). *See* plaintiff's Memorandum of Law [10-1], p. 26.

**D. Was ALJ Banks' Reliance on the Opinions of Drs. Sharif-Najafi and Ransom Improper?**

Plaintiff argues that since the opinions of Drs. Shariff-Najafi and Ransom "are conclusory, stale and based on an incomplete medical record", they cannot constitute substantial evidence to support ALJ Banks' determination. Plaintiff's Memorandum of Law [10-1], pp. 27-29. "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." Camille v. Colvin, 104 F. Supp. 3d 329, 343–44 (W.D.N.Y. 2015), aff'd, 652 Fed. App'x 25 (2d Cir. 2016) (Summary Order).

However, "[t]he mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." Whitehurst v. Berryhill, 2018 WL 3868721, *4 (W.D.N.Y. 2018); Cruz v. Commissioner of Social Security, 2018 WL 3628253, *6 (W.D.N.Y. 2018) ("consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition"). *See also* Pritchett v. Berryhill, 2018 WL 3045096, *8 (W.D.N.Y. 2018) ("[i]f a claimant's status regarding her impairments undergoes '*significant deterioration*' after a consultative examination, the examination may not constitute substantial evidence" (emphasis added)); Andrews v. Berryhill, 2018 WL 2088064, *3 (W.D.N.Y. 2018) (same).

The Commissioner argues that "the record demonstrates that A.R.L.D.'s symptoms continued to improve with treatment and medication after Dr. Ransom's and Dr. Sharif-Najafi's opinions". Commissioner's Brief [17-1], p. 27.[9] I agree. As discussed above, the

---

[9] The Commissioner also points out that while plaintiff argues that additional weight should have been afforded to Ms. Martell's questionnaire, she contends that the opinions of Drs. Ransom and Sharif-

record indicates that, with treatment, A.R.L.D. progressed in managing many of her symptoms. Although there was a brief period of decompensation in the later part of 2015 and some continued behavioral issues, I am unable to conclude that there was any sustained deterioration in A.R.L.D's condition sufficient to render the opinions of Drs. Ransom and Sharif-Najafi stale.

While their opinions were issued before the entire record was developed, "[a] medical opinion based on only part of the administrative record may still be given weight if the medical evidence falling chronologically . . . after the opinion demonstrates substantially similar limitations and findings". Pritchett, 2018 WL 3045096, *8. Here, the record demonstrates substantially similar, if not improved, limitations in the subsequent treatment records. Therefore, I also conclude that the opinions of Drs. Ransom and Sharif-Najafi were not based on an incomplete record.

In arguing that lesser weight should have been afforded to Drs. Ransom and Sharif-Najafi, plaintiff notes that Dr. Ransom's opinion was only based on single examination and that Dr. Sharif-Najafi's opinion was based solely on a review of the records available as of July 23, 2015. Plaintiff's Memorandum of Law [10-1], pp. 28-29. However, "[i]t is well settled that an ALJ is entitled to rely upon the opinions of the State Agency's medical and psychological consultants, since they are qualified experts in the field of Social Security disability . . . . As qualified experts in the evaluation of medical issues in social security disability claims, State Agency physicians' opinions may constitute substantial evidence . . . and may be relied upon if they are consistent with the record as a whole". Conlin ex rel. N.T.C.B., 111 F. Supp. 3d at 387.[10] Therefore, I conclude that there was no error in the weight ALJ Banks placed on the

---

Najafi, both of which post-date Ms. Martell's questionnaire, were stale. Commissioner's Brief [17-1], p. 27.

[10] For the first time in her reply, plaintiff argues that ALJ Banks failed to properly apply SSR 17-2p in weighing the opinions of Drs. Ransom and Sharif-Najafi. Plaintiff's Reply [18], p. 6. However, "the

opinions of Drs. Ransom and Sharif-Najafi which provided substantial evidence for his determination.

E.     **Did ALJ Banks Properly Assess Plaintiff's Credibility?**

Plaintiff argues that ALJ Banks "failed to provide an actual reason for discounting Plaintiff's alleged impairments . . . . [He] did not discuss any of the credibility factors and merely summarized the evidence and weighed the medical opinions". Plaintiff's Memorandum of Law [10-1], p. 29. In assessing credibility, ALJ Banks stated "[a]fter considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produced the alleged symptoms; however the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision". [7], p. 15.

"When assessing the existence and severity of symptoms arising from the claimant's underlying medical condition or impairment, applicable regulations state that an ALJ should inquire about various factors, including: the claimant's daily activities; intensity and persistence of pain and other symptoms; the factors that aggravate the claimant's symptoms; and the treatments and medications used to alleviate the pain." Quintana v. Berryhill, 2019 WL 1254663, *13 (S.D.N.Y. 2019) (*citing* 20 C.F.R. §416.929 and SSR 16-3P, 2016 WL 1119029). Ultimately, "[i]t is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant . . . . If

---

Court generally does not consider arguments that are raised for the first time in a reply brief". Mcfall v. Colvin, 2016 WL 1657877, *8 (W.D.N.Y. 2016).

the [Commissioner's] findings are supported by substantial evidence . . . the court must uphold the ALJ's decision to discount a claimant's subjective complaints." Aponte v. Secretary, Department of Health & Human Services of the United States, 728 F.2d 588, 591 (2d Cir. 1984). *See also* Phelps v. Colvin, 20 F. Supp. 3d 392, 404 (W.D.N.Y. 2014) ("[a]s a fact-finder, an ALJ is free to accept or reject the testimony of a parent"). However, an ALJ must explain a decision to reject plaintiff's testimony about her limitations with "sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence". Fagner v. Berryhill, 2017 WL 2334889, *9 (W.D.N.Y. 2017).

ALJ Banks clearly considered the testimony of plaintiff and A.R.L.D., which he summarized in the decision (id., p. 17), as well as the entire case record, in assessing their credibility. While ALJ Banks did not expressly state the weight he "did or did not give to [the] testimony (e.g., 'little weight' or 'great weight'), the ALJ did discuss the testimony in such a way as to make it clear to a reviewer of the decision that [ ]he discredited" it in part. Phelps, 20 F. Supp. 3d at 404–05. "When . . . the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983).

Read in its entirety, the opinion demonstrates that ALJ Banks adequately explained the reasons for his credibility determination. *See* Reyna v. Commissioner of Social Security, 2019 WL 4415142, *6 (W.D.N.Y. 2019) ("[a]lthough the ALJ may not have specifically identified the steps of the credibility analysis as identified in SSR 16-3p, the extensive discussion by the ALJ of inconsistent evidence was sufficient to enable to Court to determine the legitimate reasons for the ALJ's disbelief"). For example, ALJ Banks repeatedly

cited to instances in the treatment notes where A.R.L.D. or her mother indicated improvements in A.R.L.D.'s symptoms. *See*, e.g., [7], p. 16 ("[i]n June 2016, the claimant's mother reported to Ms. Mieney that overall things have been going well . . . . By September 2016, the claimant's mother again reported things were going pretty well . . . . On January 19, 2017, the claimant's mother reported the claimant was doing 'alright'"); p. 17 ("claimant did report she was not getting in trouble as much before . . . The claimant also reported her medications are helpful"). ALJ Banks also discounted plaintiff's testimony concerning A.R.L.D.'s academic difficulties, stating that she "is on grade level" (id., p. 18) and "has minimal academic problems with report cards showing [that she] meets or exceeds expectations". Id., p. 17. ALJ Banks further noted inconsistencies between plaintiff's and A.R.L.D.'s testimonies. *See* id., p. 22 ("[a]lthough the claimant's mother testified it is difficult to wake the claimant in the morning, the claimant testified that she gets dressed, taker her medication, brushes her hair, and walks to the bus stop in the morning"). Therefore, I conclude that ALJ Banks' assessment of plaintiff's credibility was free from legal error, and was adequately supported by substantial evidence.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [17] is granted, and plaintiff's motion [10] is denied.

**SO ORDERED**.

Dated: December 30, 2019

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge